IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

AUSTIN THOMAS                                                              PLAINITFF

v.                                    Case No. 4:16-cv-04052

UNION PACIFIC RAILROAD COMPANY                                             DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendant Union Pacific Railroad Company ("Union Pacific"). ECF No. 25. Plaintiff Austin Thomas ("Thomas") has filed a response. ECF No. 31. Union Pacific has filed a reply. ECF No. 34. The Court finds this matter ripe for consideration. For the reasons explained below, the Court finds that Union Pacific's motion should be granted in part and denied in part.

### I. BACKGROUND

This is an action to recover damages for injuries that Thomas sustained after falling off a railroad bridge near Prescott, Arkansas. At the time of the accident, Thomas was employed as a bridge repairman by Rail 1, LLC, ("Rail 1") a bridge-work and maintenance-of-way company based in Texas. In May 2012, Union Pacific entered into an agreement with Jay Construction to provide bridge maintenance on an as-need basis. In turn, Jay Construction often subcontracted with Rail 1 for various work. Rail 1 was hired by Jay Construction as a subcontractor to repair the Union Pacific railroad bridge near Prescott.

On June 24, 2013, Thomas was working to install guard timbers as part of a bridge maintenance crew on the railroad bridge. Thomas was assigned as a bridge labor hand, along with

Brandon Frederick and another Rail 1 employee. Kelvin Crecelius was acting as the crew's foreman. Charles Mann, a Union Pacific representative, was also at the job site.

At some point, Thomas and Frederick were informed that several previously installed guard timbers were crooked. It is undisputed that Thomas and Frederick were directed to straighten the guard timbers; however, the parties disagree as to who ordered the pair to fix them. As Thomas and Frederick were prying up one of the guard timbers, it slipped off the bridge to the ground 25-feet below. Thomas and Frederick lost balance and fell along with it. Thomas suffered fractures to his pelvis, spine and ankle as a result of the fall. Although Thomas and Frederick were provided with fall protection, neither was wearing it when they fell off the bridge.

In his Complaint, Thomas alleges that he was injured because Union Pacific negligently failed to provide him with reasonably safe workplace conditions in violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*. In addition to seeking relief under the FELA, Thomas asserts a negligence per se claim for alleged violations of the standards set forth in 49 CFR §§ 237.133 and 237.55. Thomas also seeks recovery under a general negligence theory for the damages caused by the accident.

On February 14, 2018, Union Pacific filed the instant motion for summary judgment, arguing that it is entitled to judgment in its favor as to Thomas's FELA claim because Thomas was not employed by Union Pacific. Union Pacific further argues that summary judgment is appropriate as to Thomas's common law negligence claim because Union Pacific had no duty to warn Thomas about the dangers of falling off the bridge. Lastly, Union Pacific argues that summary judgment should be granted in its favor with regard to Thomas's negligence per se claim because Arkansas law does not allow federal regulations to impose duties in tort. With this background in mind, the Court will proceed to the merits of Union Pacific's motion.

## II. LEGAL STANDARD

When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## III. DISCUSSION

### A. FELA Claim

The FELA governs actions by employees for personal injuries suffered while working for a railroad. 45 U.S.C. § 51. The FELA states, in pertinent part, as follows:

> Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce.

As an initial matter, the Court must determine the standard to be used regarding Thomas's FELA claim. Thomas appears to argue that the regular summary judgment standard does not apply to a FELA plaintiff attempting to survive summary judgment. Thus, according to Thomas, Union Pacific "faces a much higher burden [than] the typical summary judgment movant." ECF No. 33, p. 6. In response, Union Pacific contends that the ordinary summary judgment standard applies in this case, noting that the Eighth Circuit recently applied the tried-and-true Rule 56 standard in its analysis of whether a plaintiff was employed by a railroad for purposes of the FELA. *See Royal v. Mo. & N. Ark. R.R. Co., Inc.*, 857 F.3d 759, 762 (8th Cir. 2017).

Several federal courts of appeal, including the Eighth Circuit, have recognized that negligence claims under the FELA are subject to a more relaxed standard of proof. As one district court explained:

> The Eighth Circuit has recognized that Congress intended FELA to be a broad statute designed to be liberally interpreted to fulfill the intent of Congress. *Hane v. Nat'l R.R. Passenger Corp.*, 110 F.3d 573, 574 (8th Cir. 1997). FELA is a remedial statute grounded in negligence although the statute does not define negligence. To prevail on a FELA claim, a plaintiff must generally prove the traditional common law components of negligence which include duty, breach of duty, causation, injury, and damages. *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990). This includes showing whether the railroad failed to use reasonable or ordinary care under the circumstances. *Davis v. Burlington Northern, Inc.*, 541 F.2d 182, 185 (8th Cir.1976). The plaintiff's burden of proof in a FELA action is significantly lighter than it would be in an ordinary negligence case. In a FELA action, the railroad is liable if its negligence played any part, even the slightest, in producing the injury. *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500 (1957).

*Magelky v. BNSF Ry. Co.*, 579 F. Supp. 2d 1299, 1304 (D.N.D. 2008). While the Court is unaware of any decisions within the Eighth Circuit that directly address the issue, a review of several decisions reveals that, although courts apply a relaxed standard of proof regarding the question of

whether a railroad's negligence caused the plaintiff's injuries, the question of whether the plaintiff was employed by the railroad is not subject to a more lenient standard. *See, e.g.*, *Denney v. CSX Transp., Inc.*, No. CIV.A. 01-4520, 2002 WL 1340409, at *2 n.2 (E.D. Pa. June 20, 2002) (citing *Fulk v. Ill. Cent. R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994)) (noting that the question of employment is not subject to relaxed standards of proof); *Bradsher v. Mo. Pac. R. R.*, 679 F.2d 1253, 1256 (8th Cir. 1982) (applying ordinary summary judgment standard in its consideration of whether railroad exercised "actual control and supervision" over the plaintiff's work); *Campbell v. BNSF Ry. Co.*, No. 07-2286, 2009 WL 10700188, at *3 (W.D. Tenn. Apr. 22, 2009), *aff'd*, 600 F.3d 667 (6th Cir. 2010) (same). Accordingly, the Court concludes that the issue of whether Thomas was employed by Union Pacific at the time of his injuries should be judged under the regular summary judgment standard.

With this standard in mind, the Court must next determine whether Union Pacific is entitled to summary judgment as to Thomas's FELA claim on the basis that Union Pacific was not Thomas's employer within the meaning of the FELA. As previously noted, the "FELA . . . applies to (1) a 'common carrier by railroad' and (2) a person 'employed' by that railroad carrier." *Royal v. Mo. & N. Ark. R.R. Co., Inc.*, No. 4:15-CV-04008, 2016 WL 4426411, at *5 (W.D. Ark. Aug. 17, 2016), *aff'd*, 857 F.3d 759 (8th Cir. 2017). The parties do not dispute that Union Pacific is a "common carrier by railroad." Thus, Thomas must show that he was an employee of Union Pacific at the time of his injury to recover under the FELA.

To establish the existence of the employee relationship, a plaintiff must demonstrate that the railroad had "control" or the "right to control" the actions of the employee. *Kelley v. S. Pac. Co.*, 419 U.S. 318, 325-26 (1974); *see also Lindsey v. Louisville & Nashville R.R. Co.*, 775 F.2d 1322, 1324 (5th Cir. 1985). "The Supreme Court has recognized three circumstances under which

5

a plaintiff may be considered to be employed by a railroad even though he is nominally employed by someone else: (1) the plaintiff may be a 'borrowed servant' of the railroad; (2) the plaintiff may be simultaneously employed by both the railroad and his nominal employer; or (3) the plaintiff may be a subservant of a company that is in turn a servant of the railroad." *Kresel v. BNSF Ry. Co.*, No. 09-CV-2861, 2011 WL 1456766, at *4 (D. Minn. Apr. 15, 2011) (citing *Kelley*, 419 U.S. at 324). "[T]he Eighth Circuit has held that the overriding consideration in determining employee status under FELA is whether the railroad had control of (or the right to control) the worker in the performance of his or her job." *Kobe v. Canadian Nat'l Ry. Co.*, No. CIV. 06-3439, 2007 WL 2746640, at *2 (D. Minn. Sept. 18, 2007) (citing *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 198 (8th Cir. 1981)).

In the present case, Union Pacific argues that Thomas is not covered by the FELA because he was not a railroad employee. In support of its position, Union Pacific points to its contract with Jay Construction, which states that Jay Construction and its agents "are not and shall not be considered as employees of [Union Pacific]." ECF No. 26-1, p. 6. The same provision provides as follows:

> If [Union Pacific] determines, in its sole discretion, that any person employed by [Jay Construction] or any subcontractor is not performing the Work in accordance with [Jay Construction's] representations and warranties set forth herein, then, upon [Union Pacific's] request, [Jay Construction] shall permanently remove such person from the Work unless otherwise agreed to in writing by [Union Pacific].

*Id*. Union Pacific also directs the Court's attention to another provision in the contract which provides that Jay Construction agreed to compensate its agents and employees. *Id*. Union Pacific points out an additional contract provision, which indicates that Jay Construction agreed to provide the expertise, labor, and equipment for its work. *Id*. at 1. Union Pacific further emphasizes a

provision within the contract which states that the parties agreed that all subcontractor work would be governed by the contract.  *Id*. at 9.

According to Union Pacific, the record reflects that, at the time of his injuries, Thomas performed his job duties under the direction and control of Rail 1, consistent with the aforementioned contract's allocation of authority.  To support this position, Union Pacific points to Thomas's testimony, in which he states that he considered himself to be an employee of Rail 1; worked out of a Rail 1 truck; was provided tools and equipment by Rail 1; and stayed in a hotel provided by Rail 1 while working jobs for the company.  Union Pacific further notes that Thomas testified that Kelvin Crecelius, the Rail 1 crew foreman, asked him and Frederick—the Rail 1 crew member that fell from the railroad bridge with Thomas—to tack down the guard timbers with nails that Crecelius had brought them.  ECF No. 26-6, p. 20.  In addition, Thomas testified that Crecelius directed the pair to pry up and redo the crooked guard timbers prior to the accident.  *Id*.

Union Pacific also cites to the testimony of Charles Mann—the Union Pacific representative on site at the time of the accident—wherein he states that he had no right to hire or fire Rail 1 employees.  ECF No. 26-7, p. 33.  Mann further testified that he never directly assigned any tasks to Rail 1 employees during the project.  *See id*.  Instead, Mann would provide the scope of the work to Crecelius, who would then supervise the job, according to Mann's testimony.  *See id.* at 22.

In response, Thomas maintains that summary judgment is inappropriate because there is "conflicting testimony as to who was ordering the particular work to be completed" on the railroad bridge project.  ECF No. 33, p. 2.  Thomas cites the deposition testimony of Frederick in support of his position that Thomas and other Rail 1 crew members were under the direct control of both Crecelius and Mann.  Specifically, Frederick testified that Mann gave the crew "direct orders" and

7

that they did "exactly what [Mann] said at all times, no matter what." ECF No. 32-1, p. 62. Frederick testified that Mann led daily job briefings during the project, which included giving the crew "direct orders" regarding "what we were doing that day." *Id*. at 92. Frederick further testified that Mann explicitly instructed Thomas and Frederick to fix the guard timbers that had been incorrectly installed. *Id*. at 104. Frederick also testified that Mann threatened to "run [Frederick] off" if he did not fix the guard timbers immediately. *Id*. at 68. Based on the foregoing, Thomas argues that "there is substantial testimony that . . . Union Pacific foreman Mann [had] the right to supervise and control the work being completed . . . [and] ordered [Thomas] and Frederick out onto the bridge to replace the guard timber in question when the injury occurred." ECF No. 33, p. 8. Accordingly, Thomas urges the Court to deny summary judgment and allow the question of whether Thomas was employed by Union Pacific to be determined by a jury.

In its reply, Union Pacific argues that Frederick's testimony raises nothing more than a "sham issue" and should be disregarded because it is inconsistent with Thomas's own testimony. Specifically, Union Pacific contends that Frederick's deposition testimony contradicts Thomas's testimony on several key points. In addition, Union Pacific argues that, even if Frederick's testimony creates more than a sham issue, it fails to create a genuine issue of material fact as to whether Union Pacific had a right to control the work of Thomas and other Rail 1 crew members.

After carefully reviewing the record, the Court finds that the undisputed evidence in this case demonstrates that Thomas was not directed or controlled by Union Pacific. Thomas contends that the evidence demonstrates that Mann exercised direct control over the Rail 1 crew members by demanding that they replace the crooked guard timbers or face being removed from the bridge project, as well as by giving the crew members specific instructions during daily job briefings.

8

The Court, however, is unpersuaded that a reasonable jury could find Mann controlled or had the right to control Rail 1 employees' work based on the evidence before the Court.

Faced with similar facts, this Court granted summary judgment in favor of a railroad on the basis that the railroad did not direct or control the actions of a worker who was employed by a company contracted to perform work for the railroad. *Royal*, 2016 WL 4426411, at *1. In *Royal*, the plaintiff—an employee of North American Railway Services ("NARS")—was injured while operating a ballast regulator along tracks owned by the railroad and subsequently brought an action against the railroad seeking relief pursuant to the FELA. *Id*. The evidence showed that NARS hired and paid the plaintiff, had the authority to discipline the plaintiff and other employees, and provided training and certification to the plaintiff as to the operation of the ballast regulator. *Id*. at *6. NARS made "all decisions regarding which equipment and personnel [were] necessary to complete the job." *Id*. The plaintiff's equipment was also owned and maintained by NARS. *Id*. In addition, the plaintiff considered himself to be employed by NARS and had never been informed that he was employed by the railroad. *Id*.

In contrast, the railroad had "general oversight" authority over the project, as demonstrated by a contract which required NARS to perform its work to the satisfaction of the railroad and further required NARS to "maintain specific engineering specifications and workmanship practices." *Id*. In addition, the railroad assigned an Employee in Charge ("EIC") to the job site who conducted "prejob briefings," provided "the parameters of track and time," and told the NARS crew when it was clear to work. *Id*. The EIC also inspected the track at the end of the day and informed the plaintiff's supervisor—who was also a NARS employee—when something needed to be done differently. *Id*. Notably, the EIC "had the right to order NARS employees off the property if they were not performing their job safely or correctly." *Id*.

9

The Court found that the there was "no evidence that [the railroad] controlled or had the right to control [the plaintiff's] actions." *Id*. In reaching this conclusion, the Court noted that the plaintiff was hired and could be fired by NARS and received all work assignments from NARS. Furthermore, NARS furnished all the tools and safety equipment that plaintiff used during the work assignment. *Id*. While the Court acknowledged that the railroad was involved in providing engineering and safety inspections and employed an EIC who inspected work performed by NARS employees at the end of each workday, the Court reasoned that "the ability of [the railroad] to inspect work and enforce safety regulations on their tracks does not amount to control as required to be considered an employee." *Id*. at *7 (citing *Sullivan v. Gen. Elec. Co.*, 26 F.2d 290, 291 (6th Cir. 1955)). As the Court explained then, "[t]he right to stop and inspect work for compliance is distinguishable from the right to control the manner of compliance." *Id*. Thus, the Court concluded that summary judgment was appropriate because "a reasonable jury would not find that [the railroad] either controlled or had the right to control the work of [the plaintiff] on the day of the accident such that [the plaintiff] would be considered an employee of [the railroad]." *Id*.

Upon consideration, the Court finds that the facts presented in this case are indistinguishable from *Royal* and similarly finds that a reasonable jury could not find that Union Pacific controlled or had the right to control Thomas's work at the time he was injured. As in *Royal*, Thomas considered himself to be employed by Rail 1, received compensation from Rail 1, and worked with tools provided by Rail 1. These facts are not in dispute. However, to support his contention that Union Pacific controlled or had the right to control Thomas and other Rail 1 employees, Thomas primarily relies upon Frederick's testimony that Mann gave "distinct orders" to the Rail 1 crew members during daily job briefings regarding the tasks to be performed on the

project, as well as the fact that Mann told Thomas and Frederick to fix the crooked guard timbers prior to the accident in question.

To the extent that Thomas relies upon the "distinct orders" that Mann gave to Rail 1 crew members during their daily briefings, the evidence does not show that Mann or Union Pacific had the right to control Thomas or any other Rail 1 crew members' work. Aside from Mann's order to fix the guard timbers that were involved in the accident, Thomas has not directed the Court to any evidence of other specific orders Mann gave to Rail 1 crew members. The record does show, however, that Frederick admitted elsewhere in his testimony that Mann did not tell Rail 1 crew members how to specifically perform their individual tasks. ECF No. 32-1, p. 95. Specifically, Frederick testified that Mann "didn't make sure your T's crossed and your I's dotted. He didn't do that. He wanted to make sure your I's and your T's [were] there. That's what I made sure of." *Id*. Thus, according to Frederick's testimony, Mann's authority is akin to the "general oversight" authority that the railroad enjoyed in *Royal*. As in *Royal*, the fact that Union Pacific had the ability to inspect Rail 1 employees' work and require them to adhere to safety regulations and workmanship practices is immaterial to the question of whether Union Pacific had control or the right to control Thomas's job performance.

Taking as true Thomas's assertion that Mann threatened Thomas and Frederick with permanent removal from the jobsite, the Court further finds that the evidence would not allow a reasonable jury to find that Union Pacific controlled or had the right to control Thomas. It is undisputed that Mann did not have the authority to terminate Thomas's employment relationship with Rail 1. Despite this fact, Thomas argues that Mann's threatened removal of Rail 1 employees from the jobsite was "for all intents and purposes" a threat to terminate them from the Union

Pacific bridge project, which demonstrates that Union Pacific had the right to control Rail 1 employees' work. ECF No. 33, p. 4.

The Court finds Thomas's argument unpersuasive. As previously mentioned, the contract between Union Pacific and Jay Construction granted Union Pacific the right to remove any persons employed by a subcontractor that failed to perform their work in accordance with Jay Construction's representations and warranties. Like the Court's findings in *Royal*, the fact that a railroad reserves the right to remove a subcontractor's employees off the property for failing to perform their job safely or correctly is immaterial as to whether the railroad controlled or had the right to control over the subcontractor's employees. For the same reasons, Thomas's argument fails.

Likewise, the Court is unpersuaded that Mann's directive to fix the crooked guard timbers would allow a reasonable jury to find that Union Pacific controlled or had the right to control Thomas's work. As stated above, Union Pacific and Jay Construction's contract required the employees of subcontractors to perform their work in accordance with warranties and representations set forth in the contract or face removal from the project. ECF No. 26-1, p. 6. While Frederick testified that Mann ordered Thomas and Frederick to fix the crooked guard timbers, he later testified that Mann did not specifically tell them how to go about fixing the guard timbers. ECF No. 32-1, p. 105. Thus, the evidence before the Court demonstrates that Mann was acting within his authority to ensure that Thomas and Frederick corrected noncompliant work rather than exercising direct control over the means and manner of completing the work. As the Eighth Circuit has explained, "[t]he mere fact that a railroad reserves the right to assure performance in accordance with the specifications of the contract does not render [the] contractor a railroad employee." *Royal*, 857 F.3d at 764 (quoting *Morris v. Gulf Coast Rail Grp., Inc.*, 829

F. Supp. 2d 418, 424 (E.D. La. 2010)). Accordingly, the Court finds that Mann's demand of Thomas and Frederick to fix the crooked guard timbers is not indicative of whether Union Pacific controlled or had the right to control the work that was being completed on the jobsite at the time of Thomas's injury.

In sum, the Court finds that Thomas has not identified evidence sufficient to create a genuine issue of material fact as to whether he was an employee of Union Pacific. Accordingly, the Court concludes Union Pacific's motion for summary judgment as to Thomas's FELA claim should be granted.

**B. Negligence Per Se Claim**

Next, Union Pacific argues that it is entitled to summary judgment as to Thomas's negligence per se claim. As previously mentioned, Thomas asserts a negligence per se claim against Union Pacific for alleged violations of the safety standards set forth in 49 CFR §§ 237.133 and 237.55, which deal with bridge safety requirements. *See* ECF No. 1, ¶¶ 30-35. Specifically, Thomas asserts that Union Pacific was negligent for failing to have a supervisor immediately supervising the work on the Prescott bridge in accordance with the regulations, which led to Thomas's injuries.

Section 237.133, which concerns the supervision of railroad bridge repairs and modifications, provides as follows:

> Each repair or modification pursuant to this part shall be performed under the immediate supervision of a railroad bridge supervisor as defined in § 237.55 of this part who is designated and authorized by the track owner to supervise the particular work to be performed. The railroad bridge supervisor shall ensure that railroad traffic or other live loads permitted on the bridge under repair or modification are in conformity with the specifications in the design.

49 CFR § 237.133. Section 237.55 requires a bridge supervisor to be "a person . . . who is determined by the railroad to be technically competent to supervise the construction, modification

13

or repair of a railroad bridge in conformance with common or particular specifications, plans and instructions applicable to the work to be performed." 49 CFR § 237.55. In addition, Section 237.55 applies to any individual, regardless of job title, who controls "the operation of railroad traffic over a bridge according to its immediate condition or state of repair." *Id*.

Union Pacific contends that Thomas's negligence per se claim fails as a matter of law for several reasons. First, Union Pacific takes the position that Arkansas law generally does not allow regulations to impose duties in tort. Thus, Thomas cannot convert Sections 237.133 and 237.55 into a negligence duty, according to Union Pacific. In addition, Union Pacific argues that Sections 237.133 and 237.55 concern the safety of the bridge itself rather than the safety of bridge workers. As such, Union Pacific avers that Sections 237.133 and 237.55 do not require it to take any action related to Thomas's injuries. Moreover, Union Pacific asserts that another regulation, 49 C.F.R. pt. 214, governs the workplace safety of railroad workers, which is not invoked as a basis for liability in Thomas's Complaint. Union Pacific further asserts that the negligence per se claim must fail because it has shown that Thomas was not its employee for purposes of the FELA.

In response, Thomas appears to agree that Arkansas law generally does not allow regulations to impose duties in tort, as he does not address the merits of Union Pacific's argument on this point. However, Thomas argues that "federal law and the FELA allow[] for claims of negligence per se violations of safety statutes that have been enacted for the protection of workers." ECF No. 33, p. 14. Thomas further asserts that "there is significant evidence that Union Pacific was acting as the employer of Thomas and other Rail 1 employees," and that "[i]f a jury finds Thomas was an 'employee' of Union Pacific, they should also decide based on the facts whether Union Pacific violated any of the Code of Federal Regulation parts that have been enacted to protect workers." *Id*. at 16.

The Court is unpersuaded by Thomas's argument that he may proceed with his negligence per se claim under the FELA. As an initial matter, the Court agrees with Union Pacific that Sections 237.133 and 237.55 appear to be concerned with bridge safety rather than the safety of workers. *See Miller v. Se. Pa. Transp. Auth.*, 103 A.3d 1225, 1229 n.3 (Pa. 2014) ("These recently implemented 'Bridge Safety Standards,' found at 49 C.F.R. §§ 237.1-237.155, appear to be concerned with ensuring the structural integrity of bridges to the end of avoiding '[t]rain accidents caused by the structural failure of railroad bridges' that carry railroad tracks.") (quoting 75 Fed. Reg. 41282-01). In addition, as previously mentioned, Thomas must show that he was an employee of Union Pacific at the time of his injury to recover under the FELA. *See* 45 U.S.C. § 51 (railroad liable for any injury to an employee resulting from the railroad's negligence). The Court previously found that Thomas's FELA claim fails as a matter of law because Thomas has not identified evidence sufficient to create a genuine issue of material fact as to whether he was an employee of Union Pacific. Because Thomas rests his negligence per se claim on the basis that a reasonable jury could find that he was employed by Union Pacific, the Court finds that his negligence per se claim must also fail. Accordingly, the Court concludes that summary judgment should be entered in favor of Union Pacific with regard to Thomas's negligence per se claim.

C. **General Negligence Claim**

Next, Union Pacific asks the Court to enter summary judgment with regard to Thomas's common-law negligence claim. As previously mentioned, Thomas seeks to recover "under a general negligence theory for damages sustained by . . . Union Pacific's failure to meet its duty to use reasonable care . . . [i]n the event that [Thomas] is deemed not to fall under the FELA." ECF No. 1, ¶ 37. Union Pacific argues that Thomas's claim fails because Jay Construction is an independent contractor, and Arkansas law does not impose a duty to warn an independent

contractor's employees about "obvious dangers integral to the contractor's hired work." ECF No. 26, p. 18.

Because the Court has dismissed Thomas's FELA claims, the Court declines to exercise supplemental jurisdiction over the remaining common-law negligence claim. A district court may decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In the Eighth Circuit, the preference is for a court to decline to exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed before trial. *See Johnson v. City of Shorewood, Minn.*, 360 F.3d 810, 819 (8th Cir. 2004). Accordingly, the Court finds that Union Pacific's motion for summary judgment as to Thomas's common-law negligence claim should be denied.

## IV. CONCLUSION

For the reasons explained above, the Court finds that Union Pacific's Motion for Summary Judgment (ECF No. 25) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. The Court finds that Union Pacific is entitled to summary judgment insofar as it seeks dismissal of Thomas's claims under the FELA. In addition, the Court declines to exercise supplemental jurisdiction over Thomas's remaining common-law negligence claim in light of the dismissal of the FELA claims.

**IT IS SO ORDERED**, this 7th day of August, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge